UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KEVIN JONATHAN DALY,

        Petitioner,

                              CASE NO. 05-CV-40186
    v.                          HONORABLE PAUL F. GADOLA
                              MAGISTRATE JUDGE PAUL J. KOMIVES

S.L. BURT,[1]

        Respondent.
_____/


**REPORT AND RECOMMENDATION**


*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . 5
    C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    E.    *Analysis.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            Claim I: The Introduction of the Out-of-court Statements of the Non-testifying
            Codefendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
                1. Pre-*Crawford* Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
                2. *Crawford* Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
                3. Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
            Claim II:  The Denial of the Motion for Severance. . . . . . . . . . . . . . . . . . . . . . 28
            Claim III: Ineffective Assistance of Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . 32

_____

[1] By order entered this day, S.L. Burt has been substituted for Carmen Palmer as the proper Respondent.

I.    <u>RECOMMENDATION</u>: The Court should grant petitioner's application for the writ of habeas corpus.

II.    <u>REPORT</u>:

A.    *Procedural History*

    1.    Petitioner Kevin Jonathan Daly is a state prisoner, currently confined at the Southern Michigan Correctional Facility in Jackson, Michigan.

    2.    On August 12, 2002, petitioner was convicted of attempted armed robbery, MICH. COMP. LAWS §§ 750.92 and 750.529, and conspiracy to commit armed robbery, MICH. COMP. LAWS §§ 750.157a and 750.529, following a jury trial in the Oakland County Circuit Court. On September 4, 2002, he was sentenced as a second habitual offender, MICH. COMP. LAWS § 769.10, to concurrent terms of 1 ½ to 7, and 5 to 20 years imprisonment.

    3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

    I.    WHERE MR. DALY'S DEFENSE THEORY WAS ANTAGONISTIC AND IRRECONCILABLE TO THE THEORY OF HIS CODEFENDANTS, HE WAS DENIED A FAIR TRIAL BY THE TRIAL COURT'S REFUSAL TO EITHER SEVER MR. DALY'S TRIAL OR SEAT A JURY SEPARATE FROM THAT OF CODEFENDANTS MELOCHE AND HUNTSMAN; COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST A SEPARATE JURY FOR MR. DALY. US CONST AM VI, XIV; MICH CONST ART I SEC 17, 20.

    II.    INTRODUCTION OF THE NONTESTIFYING CODEFENDANTS' STATEMENTS TO THE POLICE, WITHOUT A LIMITING INSTRUCTION, VIOLATED THE HEARSAY RULE, DEFENDANT'S RIGHT TO CONFRONTATION, AND HIS RIGHT TO A FAIR TRIAL; COUNSEL'S FAILURE TO OBJECT TO THESE STATEMENTS DENIED DEFENDANT HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL. US CONST AM VI, XIV; MICH CONST ART 1 SEC 17, 20.

    III.    DEFENDANT'S CONVICTIONS MUST BE SET ASIDE WHERE HIS

2

ATTORNEY RENDERED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE AND THERE IS A REASONABLE PROBABILITY THAT THE OUTCOME OF THE TRIAL WOULD HAVE BEEN DIFFERENT ABSENT COUNSEL'S ERRORS.   US CONST AM VI, XIV; MICH CONST ART 1, SEC 17, 20.

> A.    GIVEN THAT THE DEFENSE THEORIES OF MR. DALY AND HIS CODEFENDANTS WERE ANTAGONISTIC, MUTUALLY EXCLUSIVE, AND IRRECONCILABLE, DEFENSE COUNSEL'S FAILURE TO MOVE FOR SEVERANCE DENIED MR. DALY A FAIR TRIAL AND THE EFFECTIVE ASSISTANCE OF COUNSEL.

> B.    DEFENSE COUNSEL'S FAILURE TO MOVE TO SUPPRESS OR REQUEST A LIMITING INSTRUCTION ON THE CODEFENDANTS' STATEMENTS NEGATIVELY IMPACTED THE OUTCOME OF THE TRIAL, AND DENIED MR. DALY THE RIGHTS OF CONFRONTATION, FAIR TRIAL, AND THE EFFECTIVE ASSISTANCE OF COUNSEL

> C.    MR. DALY WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE HIS ATTORNEY FAILED TO ARGUE AGAINST THE ADMISSION OF HIS PRIOR CONVICTION, BROUGHT OUT THE PRIOR CONVICTION, AND THEN OPENED THE DOOR TO QUESTIONS ABOUT THE FACTUAL ALLEGATIONS UNDERLYING THE FORMER OFFENSE.

IV.    WHERE MR. DALY'S CODEFENDANT WAS ACQUITTED OF CONSPIRACY TO COMMIT ARMED ROBBERY AND WAS CONVICTED OF CONSPIRING TO COMMIT UNARMED ROBBERY, THE INCONSISTENT VERDICT AGAINST DEFENDANT MUST BE VACATED.

The court of appeals found no merit to petitioner's claims, and affirmed his convictions and sentences. *See People v. Daly*, No. 243958, 2004 WL 258209 (Mich. Ct. App. February 12, 2004) (per curiam) ("State Appeal").

3

4.   Petitioner sought leave to appeal these same issues to the Michigan Supreme Court.  On October 28, 2004, the Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Daly*, 471 Mich. 906, 688 N.W.2d 91 (2004).  Two of the Justices would have remanded to the Michigan Court of Appeal for reconsideration in light of *Crawford v. United States*, 541 U.S. 36 (2004).  Petitioner moved for reconsideration.  On February 28, 2005, the Michigan Supreme Court denied the motion.   *See People v. Daly*, 472 Mich. 869, 692 N.W.2d 841 (2004). Again, two Justices would have remanded for reconsideration in light of *Crawford*.

5.   Petitioner, through counsel,  filed the instant application for a writ of habeas corpus on June 9, 2005.  As grounds for the writ of habeas corpus, he raises the following claims:

I.      THE TRIAL COURT'S ADMISSION OF MR. DALY'S NONTESTIFYING CODEFENDANTS' TESTIMONIAL STATEMENTS AGAINST HIM VIOLATED THE HEARSAY RULE, MR. DALY'S RIGHT TO CONFRONTATION, AND HIS RIGHT TO A FAIR TRIAL; COUNSEL'S FAILURE TO OBJECT TO THESE STATEMENTS DENIED DEFENDANT HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL. US CONST AM VI, XIV.

II.     WHERE MR. DALY'S DEFENSE THEORY WAS ANTAGONISTIC AND IRRECONCILABLE TO THE THEORY OF HIS CODEFENDANTS ADMITTED AGAINST HIM THROUGH THEIR CUSTODIAL STATEMENTS, HE WAS DENIED HIS RIGHT TO CONFRONTATION AND A FAIR TRIAL BY THE TRIAL COURT'S REFUSAL TO EITHER SEVER MR. DALY'S TRIAL OR SEAT A SEPARATE JURY FROM THAT OF CODEFENDANTS; COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST A SEPARATE TRIAL OR JURY FOR MR. DALY.  US CONST AM VI, XIV.

6.   Respondent filed his answer on January 5, 2006.  Respondent contends that petitioner's claims are procedurally defaulted and, alternatively,  that trial counsel made a strategic decision not to object to the admission of the codefendants' statements or to move for a separate trial or separate jury.

B.     *Factual Background Underlying Petitioner's Conviction*

On February 21, 2002, Joseph Ricketts was called to the South Lyon police department for questioning. While there, Ricketts confessed to stealing cash from the safe at a McDonald's in South Lyon. He also told the police of a robbery that was to occur later that night at the same McDonald's. As a result of Ricketts' revelations, two police officers went to the McDonald's and found petitioner and Grant Huntsman near the dumpster behind the restaurant. There was a ski mask on the ground near petitioner, and a hammer in his pocket. There was also a ski mask on the ground near Huntsman, and there was a Maglite flashlight on his person. Both were arrested. Other officers found and arrested Roger Meloche, who was waiting in Huntsman's car in a nearby apartment complex.

At the station, both Huntsman and Meloche provided the police with written statements. Petitioner was also interrogated, but his responses were neither written down nor recorded.

All three men were tried together, with the same jury. Before trial, Mr. Meloche had moved for severance or, in the alternative, for separate juries, on the ground that the introduction of the statements of the other two defendants would violate his Sixth Amendment rights to confrontation and cross-examination, citing *Bruton v. United States*, 391 U.S. 123 (1968). In its opinion and order denying the motion, the trial court found that there was no evidence that the defenses were antagonistic or mutually exclusive. Further, the court held that "all of the statements are admissible against each Defendant as statements against interest under MRE 804 (b)(3)." *People v. Meloche*, No. 02-183788-FC, at p. 3 (Wayne County, Mich., Cir. Ct., August 5, 2002) ("Trial Court Opinion and Order"). The court found that the confrontation clause would not be violated, as the statements bore sufficient indicia of reliability as required by *People v. Poole*, 444 Mich 151, 162-

5

163 (1993) and *Ohio v. Roberts*, 448 U.S. 56 (1980).  It concluded that, "Defendants are not entitled to separate juries or trials." Trial Court Opinion and Order, p. 5.

At trial, the defense theory  was that petitioner did not intend to commit armed robbery but instead intended to break and enter the McDonald's in order to steal money from the safe.

The prosecution presented the following evidence:

Three law enforcement officers testified, describing the circumstances surrounding the apprehension of the three defendants indicated above.

In addition, one of the officers, South Lyon Police Officer Baker,  testified that  petitioner, having waived his Miranda rights, told  him the following: He and Huntsman were both former employees of this McDonald's and they went there  to rob the manager when he left the restaurant with the nightly deposit.  Meloche was to be the getaway driver/lookout.  Petitioner explained that he was not going to hurt the manager with the hammer but carried it for later use in case there was a dispute with his cohorts over the division of the proceeds.  Officer Baker further testified that none of the defendants told him anything about intending to break into McDonald's to steal from the safe.

Although neither of petitioner's codefendants testified at trial, the prosecution introduced their statements into evidence through the testimony of Officer Baker.  Baker testified that when he approached Meloche in the car and asked if there were any guns involved, Meloche "stated he did not believe there was any guns involved, but he knew at least one hammer was involved."  Trial Transcript, Vol. I, p.220.   Baker further testified that, during questioning at the station,  Meloche told him that  petitioner's and Huntsman's plan was to rob the manager as he exited the McDonald's.  Meloche also told Baker that he did not really want to be involved, but because of constant peer pressure, he had agreed to the least amount of participation possible.  Baker read Meloche's  written

6

statements into the record.  In the first one, Meloche wrote the following:

> I am Roger A. Meloche, Junior.  I wanted no part of this and here's the truth.  About a week ago Kevin and Grant approached me about making fast money.  At first I wanted nothing to do with it but they continued to pressure me.  I started to feel like the only way out was my least amount of participation.  After the time of being asked a thousand times, I finally said I would stay in the car until they got back and then I was leaving.  Kevin and Grant got out and walked to McDonald's to rob them.  I sat in the car, waiting until they were to come  back.  At first I told them that I wanted nothing to do with it and when they came back I was leaving.  And, well, obviously they never came back because I'm here, not at Aaron's, like I should be, but I had and want nothing to do with this.

In response to Officer Baker's  request that he make a more detailed statement, Meloche

wrote out a second statement, which included an assertion that the plan was to rob the night

manager, but that he himself had refused to share in the proceeds:

> All I know is they said they planned to go to McDonald's and rob them (Mike).  Kevin used to be a manager and said that they would probably get about two grand.  They said it would be enough to pay for the (Grant's) apartment and have a party.  Kevin had a hammer and Grant had a flashlight.  I don't know, but they were probably going to hit him and take the deposit bag.  They asked me if I wanted money and I said I don't want nothing but for them to leave me alone after this, 'cause I wanted no involvement and I still, I still don't.  They planned to go up there, get the money, and run back.  When they flashed the light three times, I was on my own.  They were leaving town and going to get a hotel room to do whatever.  I was going either to Aaron's or to my friend Joe's to stay the night.

In response to the prosecutor's questions, Officer Baker explained that "Mike" was a reference to

the night manager, and that the plan was to rob the manager.

Officer Baker similarly testified  to what he characterized as  Mr. Huntsman's "voluntary

statement."  According to Baker, Huntsman told him that  the plan was to rob the night manager

when he came out with the deposit,  and that  Huntsman did not mention anything about breaking

into McDonald's or robbing the safe.  Huntsman also told him that the this was a spur of the moment

thing, and not well planned out.

Baker also read Huntsman's written statement into the record:

Me, Roger, Kevin went to McDonald's. We were going to run up, grab a bag and run away. We had no intentions of hurting no one. We were there about five minutes before the police came. The reason all this happened was because I was sleeping in my car, my father was losing his house, I just wanted a warm place to sleep and food and a shower. Again, there was no intention of bodily harm, just grab and run. I just wanted to start my life obviously the wrong way.

The written statements themselves were likewise received into evidence. On cross-examination, Officer Baker acknowledged that Meloche had downplayed his own involvement.

After presenting the above evidence, the prosecution rested and all three defendants moved unsuccessfully for directed verdicts. Specifically, petitioner moved to have the charges reduced to conspiracy to commit unarmed robbery and attempted unarmed robbery.

Petitioner testified in his own behalf that his intention had been to break into the McDonald's and to steal money from the safe. Petitioner explained that he had worked briefly as a manager at this McDonald's, terminating two weeks before the charged incident. During his employment, pursuant to his duties, he had been given the combination to the safe. However, as a new employee, he had not been allowed to make night deposits. The deposits had been left to more experienced employees during the day. Petitioner had assumed that his replacement, "Mike," had likewise not been there long enough to make the night deposit and that the day's proceeds would be in the safe. On the night in question, petitioner and Huntsman were waiting by the dumpster for the manager, who would be the last employee on the premises, to leave. Petitioner intended to break the window with the hammer after the manager left, enter the restaurant, open and empty the safe, and leave. Huntsman carried the flashlight in order to illuminate the dial on the safe. They were going to wear

8

the ski masks  because of the surveillance cameras in the restaurant.  Petitioner pointed out that he and Huntsman were not positioned to accost the night manager, since the back door could not be used as an exit at the end of the last shift.   The manager would have had to exit from the side door, which was near his car; petitioner and Huntsman would have had to cross a long distance in full view of the manager and of the street in order to reach him.

Petitioner acknowledged that Ricketts had been with them the day before  the attempt  and that they had discussed what they planned to do.  Petitioner denied that he told Ricketts that they intended to rob the night manager.   Petitioner explained that there had been discussions for a day or two before the attempt where Huntsman argued that they should grab the money from the night manager.   Huntsman feared the cameras inside the building and had a feeling that the manager would be carrying the money.   Petitioner had explained to him that they had to enter the building to get the money.   While they were in the car on the way to the restaurant, he and Huntsman again argued as to how the crime was to be committed. They had never really reached an agreement.

Petitioner further stated that he did not tell Officer Baker that he intended  to rob the manager of the night deposits.  Rather,  he told Baker that they were waiting for the manager to leave to break in and rob McDonald's.  Petitioner explained that when he used the word "rob," he used it to mean breaking in and stealing the money.  Petitioner acknowledged that there was another officer present when Officer Baker  questioned  him.

On cross-examination, the prosecutor asked petitioner to explain inconsistencies between his testimony and Huntsman's and Meloche's written statements.

Codefendant Huntsman called Ricketts to testify.  Ricketts testified that, while he was with the defendants the day before their arrests, they discussed  punching the night manager as he exited

McDonald's and taking the money bag. It was agreed that no weapon would be involved. Huntsman asked Ricketts to assist but he ultimately declined. The plan was both petitioner's and Huntsman's, but Ricketts acknowledged that it had been Huntsman who put forth the idea of robbing the night manager, not petitioner, and that Huntsman and petitioner argued, one of them saying that there was a better way to proceed. He heard nothing about breaking and entering the building and taking money from the safe. He did not know if the plan changed the following day. Ricketts was released and never charged after he had advised the police of the plan, even though he had confessed to stealing money from the McDonald's safe himself, on February 15th. He acknowledged that he gave the police the information about the defendants' plan in order to help out his own situation and to avoid going to jail.

The prosecutor called Sergeant Baaki as a rebuttal witness. Baaki testified that he was present when Officer Baker questioned petitioner. Petitioner told Baker that he and Huntsman were going to take the deposit money from the night clerk at McDonald's while Meloche waited in the car. Petitioner did not say anything about breaking into the McDonald's. Petitioner also stated that he had the hammer in case he had a problem with Meloche and Huntsman afterwards over the distribution of the proceeds. Baaki did not have any notes or a report to support his recollection.

During deliberations, the jury requested copies of the written statements of all three defendants, and were provided copies of Meloche's and Huntsman's statements (petitioner not having written one). The verdict was reached approximately an hour later. Petitioner and Huntsman were convicted as charged. Meloche was convicted of conspiracy to commit unarmed robbery and attempt armed robbery.

C.    *Procedural Default*

10

Respondent first contends that petitioner's claims are barred by his procedural default in the state courts because petitioner did not object at trial to the admission of his co-defendants' statements nor did he object to being tried jointly with them.  Petitioner argues that the issues were adequately preserved at trial by the motion for severance filed by his codefendant, which raised and was based on the *Bruton* confrontation problem.  Alternatively, petitioner claims that his trial attorney's failure to object and to move for severance constituted ineffective assistance of counsel.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  A procedural default bars consideration of a federal claim on either direct or habeas review if the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on the procedural bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989).  However, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim."  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.")

For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment ." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004).  The Michigan Court of Appeals, in the last  reasoned opinion, held that both issues were unpreserved and reviewed them under a plain error standard.  Plain error review does not constitute

a waiver of state procedural default rules.  *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

It is true that a failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors.  *See People v. Carines,* 460 Mich. 750, 763; 597 N.W. 2d 130 (1999).  However, Michigan appellate courts have held that, where defendants are jointly tried, it is not necessary for an attorney to repeat objections adequately made by counsel for a codefendant in order to preserve an issue.  *People v Bradford,* 69 Mich. App. 583, 586; 245 N.W.2d 137 (1976).  A codefendant's objection is sufficient if it directs the judge's attention to the matter.  *Id.  See also, People v. Logie*, 321 Mich. 303, 307; 32 N.W. 2d 458 (1948); *People v Clark,* No. 256190, 2005 WL 3556153 (Mich. Ct. App., December 29, 2005)[2]; *People v. Harper*, No. 230717, 2004 WL 1335834*1 (Mich. Ct. App., June 15, 2004); *People v. Head*, No. 227053, 2002 WL 1747949*5, n.4 (Mich. Ct. App., July 26, 2002).

Here, counsel for co-defendant Meloche moved for severance or for separate juries on the ground that the introduction at trial of the other defendants' statements to the police would violate his Sixth Amendment right to confrontation.  The trial court summarized the statements of all three defendants.  While it couched its "indicia of reliability" review in terms of whether petitioner's and Huntsman's statements were admissible against Meloche, it concluded that each of the statements was admissible against the other two defendants, finding that there was no confrontation clause problem and that therefore, "Defendants are not entitled to separate juries or trials."  The Michigan Court of Appeals in rejecting petitioner's claim of ineffective assistance for failing to object to the

---

[2] In response to the defendant's claim that his attorney had been ineffective in not moving to sever in order to avoid the same confrontation problems at issue in petitioner's case, the Michigan Court of Appeals noted that, although it was not necessary to resolve the preservation question in the case before it, counsel for codefendant had made the motion and, "Typically, it is unnecessary for one counsel to repeat an objection voiced by another counsel when the objection is sufficient to direct the trial court's attention to the matter."  *Clark*, 2005 WL 3556153 *4, n. 6, citing *Bradford*.

introduction of the statements or to move for severance reasoned that such actions would have been futile, since the trial judge "considered and rejected both actions on a codefendant's motion [and] [t]he law does not require an attorney to take futile actions..." State Appeal, p. 2 ; 2004 WL 258209*1 (citation omitted).  Under these circumstances, it cannot be said that there was  a firmly established and regularly followed state practice that required counsel for petitioner to repeat the motion and arguments of co-counsel.  Procedural default does not bar consideration of petitioner's claims.

Furthermore, petitioner has raised a fully preserved and exhausted claim of ineffective assistance of trial counsel for failure to object to the introduction of his codefendants' statements and for failure to move for severance.  In reviewing the question of ineffective assistance in this factual setting,  this Court by necessity must also analyze the merits of the underlying  claims.

Respondent also claims that petitioner has failed to exhaust his arguments that are  based on *Crawford v. Washington*, 541 U.S. 36 (2004) because these arguments were never fairly presented to the state courts.  The Michigan Court of Appeals issued its opinion on February 12, 2004.   The United States Supreme Court decided  *Crawford* on March 8, 2004.  Petitioner filed his Application for Leave to Appeal in the Michigan Supreme Court on March 19, 2004.  In the application, pp. 27-30, petitioner extensively argued the applicability of *Crawford* to the facts of his case.  In the order denying leave to appeal,  two of the Justices stated that they would have remanded to the Court of Appeals for reconsideration in light of *Crawford*.   Petitioner moved for reconsideration, again arguing the effect of *Crawford* on his issues.  In the order denying the motion, the same two Justices again stated that they would have granted reconsideration and remanded to the Court of Appeals for reconsideration in light of *Crawford*.   Respondent's claim that petitioner did not argue *Crawford*

13

until the motion for rehearing, and "sat idle until the application was denied some seven months later," Answer to Petition for Writ of Habeas Corpus, p. 12, is not accurate.

The exhaustion requirement serves the interests of comity and federalism and requires that the state court have the first opportunity to correct a constitutional violation. *Rhines v. Weber*, 544 U.S. 269, 273-274 (2005); *Turner v. Bagley*, 401 F.3d 718, 724 (6th Cir. 2005). Petitioner fully and fairly argued *Crawford* in the state court and provided the state court the opportunity for review. His claims based on *Crawford* are therefore exhausted.

Further, in terms of exhaustion, it is doubtful that petitioner was even required to specifically argue *Crawford*. There is no question but that he exhausted his confrontation clause violation claim, and there is no requirement that he even cite the Supreme Court cases supporting his claim, only that he phrase his claim in terms of a denial of a specific constitutional right and fairly present the substance of the claim to the state courts. *See Fulcher* v. *Motley*, 444 F.3d 791, 798 (6th Cir. 2006).

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination

14

of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court

decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.)

When the state court has not addressed or resolved claims based on federal law, courts have held that the decision is not an "adjudication on the merits." Thus, a federal habeas court reviews such unaddressed claims de novo. See *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir.2003) (distinguishing "no results" from no reasoning). Where, however, the state court disposes of a constitutional claim but fails to articulate its analysis, a federal habeas court must conduct an independent review of the record and applicable law to determine whether, under the AEDPA standard, the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented.

16

*Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir.2000). The independent review, however, is not a full, de novo review of the claims. The review remains deferential, because the court cannot grant relief unless the state court's result contradicts the strictures of AEDPA. *Id*.

Lastly, the reviewing Court presumes the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. See *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir.1998).

E.      *Analysis.*

*Claim I*: **The Introduction of the Out-of-court Statements of the Non-testifying Codefendants.**

Petitioner argues that the introduction of the codefendants' statements at trial, as proof of petitioner's guilt, violated his rights under the Confrontation Clause and denied him a fair trial.

As summarized by the trial court, the codefendant's motion to sever or for separate juries was based on his claim that the introduction of his codefendants' statements would violate his Sixth Amendment right to confrontation, under *Bruton v. United States*, 391 U.S. 123 (1968). The trial court held that all of the statements were admissible against each defendant as statements against interest under Mich. R. Evid. 840(b)(3). The court  found that the confrontation clause would not be violated as the statements bore sufficient indicia of reliability as required by *People v. Poole*, 444 Mich 151, 162-163 (1993) and *Ohio v. Roberts,* 448 U.S. 56 (1980). Although the trial court's analysis was at times directed as to whether or not petitioner's and Huntsman's statements bore sufficient indicia of reliability to be introduced against Meloche, the court also summarized the contents of Meloche's statements, and, as indicated,  concluded that the statements of all three defendants were admissible against the others. It is thus logical to assume that it applied that same

17

factors to Meloche's statement.  The trial court found sufficient indicia of reliability because the statements were made voluntarily, without promise of leniency or reward, and without fear of physical harm and without coercion.  As additional indicia, the court also found that the statements did not minimize the role of the declarant or shift blame, and were made without a reason to distort the truth.

The Michigan Court of Appeals reviewed this claim under a plain error analysis, and concluded that there was no error: "The trial court admitted the statements under MRE 804(b)(3) using our Supreme Court's analysis in *People v. Poole*, 444 Mich 151; 506 NW2d 505 (1993).  The court concluded that each statement was voluntary and non-exculpatory, and that there was no evidence the declarants lied." State Appeal,  p. 2;  2004 WL 258209*1.

In his application for leave to appeal, petitioner further argued that the recently decided *Crawford* opinion clearly established that his rights to confrontation had been violated.

### 1. Pre-*Crawford* Analysis

The Court should conclude that the decision of the Michigan courts was contrary to and an unreasonable application of the clearly established law before *Crawford*.

The confrontation clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right...to be confronted with the witnesses against him." U.S. Const. amend. VI.  Before *Crawford*, confrontation clause challenges were analyzed under the test described in *Ohio v. Roberts*, 448 U.S. 56 (1980).   Under this test, the admission of hearsay statements by unavailable declarants did not violate the Confrontation Clause  if they bore "adequate indicia of reliability," either by falling within a firmly rooted hearsay exception, or by possessing "particularized guarantees of trustworthiness"such that adversarial testing would be expected to add little, if

18

anything, to the statement's reliability.   448 U.S. at 66.  The indicia of reliability were to be determined by virtue of the inherent trustworthiness of the statement itself, focusing on the circumstances surrounding the making of the statement, and not by reference to other evidence at trial. *Idaho v. Wright*, 497 U.S. 805, 822 (1990).

The Unites States Supreme Court has held that an accomplice's confession which inculpates a defendant is not admissible under a firmly rooted exception to the hearsay rule. *Lilly v. Virginia,* 527 U.S. 116, 134 (1999).  The Supreme Court explained that it had repeatedly found that such statements were presumptively unreliable and their admission violative of the Confrontation Clause. *See e.g., Douglas v. Alabama*, 380 U.S. 415 (1965); *Bruton v. United States,* 391 U.S. 123 (1968) (ordering a new trial, even though the jury had been instructed to consider the non-testifying codefendant's statement only against the codefendant); *Lee v. Illinois* 476 U.S. 530, 541, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) (trial court's reliance upon a codefendant's confession as substantive evidence against the defendant violated her rights under the confrontation clause); *Cruz v. New York,* 481 U.S. 186 (1987)*; Gray v. Maryland*, 523 U.S. 185 (1998) (applying *Bruton* to bar the admission of a non-testifying codefendant's confession even after the name of the other defendant had been redacted).  See also *Hill v. Hofbauer*, 337 F.3d 706 (6th Cir. 2003) (Michigan court's admission of a non-testifying codefendant's statement as a statement against penal interest was contrary to clearly established Supreme Court precedent).

It is therefore necessary to determine if the statements of the codefendants  had "particularized guarantees of trustworthiness," under the second prong of *Roberts.*  Review by this Court is de novo. *Lilly, supra*, 527 U.S. at 136.  While at trial the burden was on the state, the burden at this stage is on  petitioner, who must prove that the state courts were in error and that the

statements lacked the particularized guarantees of trustworthiness required by *Roberts*. *Fulcher v.*
*Motley*, 444 F.3d 791, 806-807 (6th Cir. 2006). The Court should conclude that petitioner has met
that burden. Initially, in making its determination, the trial court and the Michigan Court of
Appeals erred in relying on the voluntariness of the codefendants' statements. As stated in *Lee*,

> Although ...the confession ...was voluntary for Fifth Amendment
> purposes, such a finding does not bear on the question of whether the
> confession was also free from any desire, motive, or impulse Thomas
> may have had either to mitigate the appearance of his own culpability
> by spreading the blame or to overstate Lee's involvement ...

*Lee*, 476 U.S. at 544.

Likewise, the Michigan Court of Appeals' conclusion that there was no evidence that the
codefendants lied in their statements would appear to be a reference to other evidence introduced at
trial, consideration of which would be in contravention of *Wright*.

As petitioner argues, the fact that the statements were made in police custody weighs heavily
against a finding of adequate reliability. "[W]hat renders a statement elicited by police interrogation
unreliable is the fact that the circumstances offer the person in custody an opportunity to shift
scrutiny away from himself or herself by implicating another." *Fulcher v Motley,* at 807-808.

As petitioner further argues, the fact that both codefendants either shifted or spread the blame
in their statements likewise weights heavily towards satisfying his burden. "It is highly unlikely that
the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can
be effectively rebutted ...when the government is involved in the statements' production, and when
the statements describe past events and have not been subjected to adversarial testing." *Lilly*, *supra,*
527 U.S. at 137. The trial court's conclusions, that the statement were made without motivation
to distort the truth, and did not minimize the declarants' guilt or shift blame, are not supported by the

20

record.  Meloche described petitioner's and Huntsman's plan to rob the night manager in detail.  As for himself, he claimed he was but a reluctant and minimal participant.  He claimed that they had pressured him continuously, that he only agreed to wait for them in the car, and that he declined any share in the proceeds.  Huntsman admitted his own involvement, but also fully and equally implicated petitioner and Meloche, and sought to downplay his own guilt and excuse his conduct, explaining that he only participated because he was without a place to live and his father was losing his house.

While both the trial court and the Michigan Court of Appeals relied on the declarants' admissions of their own guilt in the statements, this is not sufficient to establish the requisite indicia of reliability.  *Hill v. Hofbauer*, *supra* at 718.   The statement may be sufficiently reliable as to the declarant's own guilt, but this does not make it sufficiently reliable as to someone else's  guilt.  "[T]hat a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts." *Lilly*, 527 U.S. at 139, quoting *Williamson v. United States*, 512 U.S. 594, 599 (1994).

## 2. *Crawford* Analysis

Petitioner further claims that *Crawford* applies to his case and likewise mandates a finding that his rights to confrontation were violated.  This Court should conclude that his argument is correct.

Habeas review is conducted in light of the law as it existed at the time of the final state court decision.  *Baze v. Parker,* 371 F.3d 310, 318 (6th Cir. 2004).  Stated otherwise, "The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his  state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000).   See also, *Onifer v. Tyszkiewicz*, 255 F.3d. 317-318 (6th Cir. 2001) ("Under

AEDPA...our inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time Onifer's conviction became final."); *Fulcher* v. *Motley*, *supra,* 444 F.3d at 815 ("Respondent does not dispute that had *Crawford* come out prior to the final disposition of Petitioner's case on direct review, the Court's holding would have applied to Petitioner's case.") (Clay, J., concurring).[3]

Petitioner's convictions became final when leave to appeal was denied by the Michigan Supreme Court, see *Wenglikowski v. Jones*, 162 Fed.Appx. 582, 585 (6th Cir. 2006) ("The Michigan Supreme Court rejected petitioner's request for review on March 24, 1986, thus rendering petitioner's conviction final.") *Crawford* was the law at that time.[4]

---

[3] While an argument can be made that the date of the last reasoned decision should control, the Sixth Circuit Court of Appeals has consistently looked to the law at the time the conviction became final. As one court explained, the Supreme Court has provided "inconsistent guidance" on this question:

> The Supreme Court has provided inconsistent guidance on the precise time to which a federal court should look to assess what was "clearly established Federal law, as determined by the Supreme Court." In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), Justice Stevens, writing for a majority of the court, stated: "The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." Id. at 390, 120 S.Ct. 1495 (Stevens, J., for the court) (emphasis added). In a separate opinion, Justice O'Connor, also writing for a majority of the court, stated that the phrase "clearly established Federal law, as determined by the Supreme Court" refers "to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." Id. at 412, 120 S.Ct. 1495 (O'Connor, J., for the court) (emphasis added); see also *Yarborough v. Alvarado*, 541 U.S. 652, 124 S.Ct. 2140, 2147, 158 L.Ed.2d 938 (2004); *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

*Brown v. Greiner*, 409 F.3d 523, 533 n. 3 (2d Cir. 2005).

[4] Note that this is not a retroactive application of *Crawford*. The question of the retroactivity of *Crawford* on collateral review is currently before the United States Supreme Court. *See Whorton*

In *Crawford*, the defendant challenged the admission at trial of a statement by the defendant's wife made to the police in a custodial setting, shortly after the crime occurred, a statement which tended to inculpate the wife.   She did not testify at trial because of Washington's marital privilege.   The Washington Supreme Court upheld the conviction and  the admissibility of the statement under the *Roberts* indicia of reliability test.   On direct appeal, the United States Supreme Court reversed and overturned the "indicia of reliability" approach of *Roberts*.   The Court concluded that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional concerns is the one the Constitution actually prescribes: confrontation." *Id.*, 541 U.S. at 69.

> Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability." Certainly none of the authorities discussed above acknowledges any general reliability exception to the common-law rule. Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined. *Cf.* 3 Blackstone, Commentaries, at 373 ("This open examination of witnesses ⋯ is much more conducive to the clearing up of truth") ⋯⋯
>
> Where testimonial evidence is at issue ⋯ the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of "testimonial." Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.

*Crawford*, 541 U.S. at 61-62, 68 (footnote omitted).

---

*v. Bockting*--- S.Ct. ----, 2006 WL 1310697 (U.S.)  The Sixth Circuit Court of Appeals has held that *Crawford* does not apply retroactively.  *Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005).

In the case at bar, there is no question but that the codefendants' statements were made during police interrogation and were therefore testimonial. Since the codefendants did not testify, there was no opportunity for cross-examination. Under *Crawford*, petitioner has clearly made out a confrontation clause violation. The Court should conclude that the decision of the Michigan courts was contrary to Federal law as established by the Supreme Court.

### 3. Prejudice

Respondent has not argued that the introduction of the codefendants' statements was not prejudicial, and so arguably has waived this defense. See *Calvert v. Wilson*, 288 F.3d 823, 835-837 (6th Cir. 2002) (Cole, J., concurring). Resolution of this question is not necessary, if, as recommended below, the Court concludes that the error was not harmless.

A constitutional error is cause for federal habeas relief only if it has a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). In determining whether confrontation clause error is harmless, the reviewing court should consider, "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points,...and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall,* 475 U.S. 673, 684 (1986). "This standard of review requires the reviewing court to examine the effect of the error on the jury rather than the sufficiency of the evidence at trial." *Calvert v. Wilson*, *supra* at 833. When the record is so evenly balanced that there is a grave doubt as to whether the error had a substantial and injurious effect or influence in determining the jury's verdict, the error is not harmless. *O'Neal v. McAninch*, 513 U.S. 432, 436-437 (1995).

24

There was overwhelming evidence that petitioner was about to engage in some crime at McDonald's.  Petitioner did not claim innocence at trial but claimed to be guilty of a lesser or a different crime.   One of the elements of the charged offenses that had to be proven was that the crime planned and attempted was **armed** robbery.   The prosecutor argued throughout that petitioner intended to utilize the hammer found on his person as a dangerous weapon and petitioner disputed this.   In  moving for a directed verdict, petitioner argued that the hammer was not to be used as a weapon and that the charges should be reduced to conspiracy to commit unarmed robbery and attempted unarmed robbery.    At the end of trial, the jury was instructed on these lesser offenses.

The evidence at trial basically consisted of the police testimony as to the circumstances of the arrests, the statements of all three defendants,  the testimony of  Ricketts and petitioner's own testimony.   It was clear that petitioner and Huntsman had a hammer and a flashlight on their respective persons as they awaited perpetration of the crime.  According to Officers Baker and Baaki, petitioner admitted to him that the plan was to rob the night manager, but  that petitioner denied that the hammer was to be used during the robbery.   Ricketts testified, too, that the plan was to rob the night manager, but he further testified that no weapon was to be used.   Petitioner testified that the hammer was to be used to break a window so that they could enter the restaurant, and that the flashlight was to be used to illuminate the dial on the safe.

The prosecutor used Meloche's out-of-court statement to prove that the plan was to use these implements as weapons.   In Meloche's second written statement, he asserted  that "Kevin had a hammer and Grant had a flashlight.  I don't know, but they were probably going to hit him and take the deposit bag."   The prosecutor argued extensively that this statement, as well as Meloche's response at apprehension  that a hammer was involved, was proof that the hammer  was intended as

25

a weapon and that armed robbery was the intended crime.

The prosecutor also had to prove that the plan was to rob the night manager and not, as petitioner testified, to break into the restaurant. The evidence against petitioner on this point was more compelling but not unassailable and the out-of court statements were an important part of the prosecution's proofs. Two police officers testified that petitioner's statement was that he was at the McDonald's to rob the manager when he left the restaurant with the night's proceeds. However, the statement was not recorded, the second officer had no notes or report to support his recollection, and defense counsel routinely argue to juries that police officers are not without bias in terms of supporting the prosecution's case. Petitioner testified that he told the police that he intended to break in and rob the McDonald's, and that he used the term "rob" in the colloquial sense, that is, to steal, offering at least some explanation as to how the officers could have misunderstood what he meant. Ricketts testified that the plan was to punch the manager and take the money, but he agreed that this idea was put forth by Huntsman, that petitioner said that there was a better way to proceed, and that he did not know if the plan changed by the following day when the crime was attempted.

At the moment when they actually went forward, only petitioner and the two codefendants knew the final plan. Petitioner testified that he was a former employee, that he knew the combination to the safe, and that he knew the new night manager would not have been entrusted with making the deposit. For these reasons, petitioner explained, he knew that the only way to get money was to break into the McDonald's after everyone left, and that this was his plan. The out-of-court statements of each codefendant provided that the plan was to rob the night manager, with no mention of an opposing or alternate plan of breaking and entering. In closing statements, the prosecutor extensively argued all of the defendants' statements as proof of guilt of the charged armed robbery

26

offenses.

In *Richardson v. Marsh*, 481 U.S. 200, 208, the Supreme Court recognized that confessions which expressly implicate a defendant are "powerfully incriminating."  In *Calvert, 288 F.3d* at 834-835, the Sixth Circuit explained that "specific testimony that 'the defendant helped me plan and commit the crime' is much more vivid than any evidence that is incriminating only when the jury makes an inference."   There can be but little doubt that the jury relied on the codefendants' statements in finding that the plan and the attempt was to commit an armed robbery.   There can likewise be but little doubt that, in the eyes of the jury, the codefendants' statements bolstered the testimony of the officers as to the contents of petitioner's statements.

It is likewise significant that the jury asked for the codefendants' statements during deliberations.  *Fulcher v. Motley*, *supra* at 811 ("[T]he most logical reason as to why the jury asked to rehear the tape of Ash's interview was that they did not consider Wright's direct testimony alone to be sufficient for a guilty verdict.")

Viewing the totality of the evidence, this Court should conclude that it cannot reject the possibility that the admission of the codefendants' statements had a substantial and injurious effect or influence in determining the jury's verdict, and  that it has a grave doubt that they did not. [5]

_____

[5]  In numerous cases, the reviewing courts have refused to find that the admission of a non-testifying witness's statement to police was harmless error,  in the face of equally or more compelling evidence than that at bar. *See e.g., Fulcher v. Motley, supra* (admission of his non-testifying girlfriend's statements to police, that she washed blood out of Fulcher's pants and disposed of a key for him, was not harmless, despite the testimony of an eyewitness accomplice that Fulcher beat the victim to death during a robbery  and took the front door key  ("[W]e must consider the likelihood that Ash's statement *bolstered* [the accomplice's] account in the jury's eyes." 444 F.3d at 809 (emphasis in original); and despite the further  testimony of  two inmates that Fulcher admitted committing the murder, and that of a third inmate that  Fulcher offered him money to provide an alibi); *Dorchy v. Jones*, 398 F.3d.783 (6th Cir. 2005) (admission of out-of-court statement of an eyewitness, that Dorchy shot the victim during a discussion of a drug debt, was not harmless in light of Dorchy's testimony that the shooting was in self defense, despite  testimony of

*Claim II:* **The Denial of the Motion for Severance.**

Petitioner claims that his rights to confrontation and to a fair trial were denied by the trial court's refusal to grant him a separate trial or a separate jury.

If the Court grants habeas relief on the basis of the confrontation clause violation in the previous claim, this claim is rendered moot. *See Scott v. Bock*, 241 F.Supp.2d 780, 792 (E.D. Mich. 2003).

However, the finding of a constitutional violation and prejudice with regard to the above issue would logically require similar findings on this issue.

As indicated above, codefendant Meloche moved for a separate trial on the ground that his right to confrontation would be violated by the introduction of the statements of the other two codefendants and the trial court denied the motion, finding in part that the introduction of the statements would not violate the confrontation clause. The trial court also found that the defenses would not be mutually exclusive or antagonistic. The Michigan Court of Appeals reviewed the issue for plain error, but only from the perspective of whether the defenses of the codefendants were mutually exclusive or irreconcilable, under *People v. Hana*, 447 Mich. 325; 524 NW2d 682 (1994), and found no error. The Court of Appeals did not address petitioner's argument that severance had been necessary to avoid the confrontation violation and that therefore a specific trial right had been

---

other witnesses that Dorchy called the victim and threatened to kill him and armed himself just before the encounter and testimony that there were no signs that Dorchy and the victim were arguing or fighting just before Dorchy fired; *Hill v Hofbauer, supra* (where malice was an element of the second degree murder charge, admission of a non-testifying codefendant's statement was not harmless, even though Hill's own statement established that he was a willing participant in the robbery; the codefendant's statement established that Hill knew another accomplice was carrying a gun, and Hill's statement left that open); *Stapleton v. Wolfe*, 288 F.3d 863 (6th Cir. 2002) (the admission at trial of the out-of-court statements of one accomplice was not harmless error, even though another accomplice testified at trial to Stapleton's substantial involvement in the crime).

violated under *Zafiro v. United States*, 506 U.S. 534 (1993).  The Court of Appeals however, as discussed above, rejected the argument that there had been a confrontation clause violation.

A petitioner seeking habeas relief on the basis of a trial court's failure to sever his trial from his co-defendant's bears a very heavy burden. *See United States v. Horton*, 847 F.2d 313, 316 (6th Cir.1988).  Petitioner "must show both (1) an abuse of discretion on the part of the trial court and (2) compelling and specific prejudice in order to successfully challenge the joinder of his trial with that of [his co-defendants]. *Clark v. O'Dea*, 257 F.3d 498, 504 (6th Cir.2001) (citing *Jenkins v. Bordenkircher*, 611 F.2d 162, 168 (6th Cir.1979).  A Court may grant habeas relief based on a state court's decision to deny a motion for severance only if the joint trial was so prejudicial that it denied a petitioner his right to a fair trial. *Zafiro v. United States*, 506 U.S. at 538-39.  The court  must decide if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence"); *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986) ( "misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial").  Habeas relief is not warranted merely because defendants present antagonistic defenses. *Stanford v. Parker*, 266 F.3d 442, 458 (6th Cir. 2001).  "Mutually antagonistic defenses are not prejudicial *per se.*"  *Zafiro*, 506 U.S. at 538.  The *Zafiro* Court specifically recognized that a potential *Bruton* violation could  require severance. *Id.*, 506 U.S. at 539

While petitioner argues that the defenses were mutually antagonistic and irreconcilable, he has not shown that the trial court or the Michigan Court of Appeals erred in concluding otherwise. What he has shown is that the joint trial resulted in a violation of his constitutional right under the confrontation clause and that the error was not harmless.   Accordingly, petitioner has also met his

burden of showing that the denial of the motion for severance denied him his right to a fair trial.

*Claim III:* **Ineffective Assistance of Counsel**.[6]

As he did in the in state court, petitioner contends that his federal constitutional right to the effective assistance of counsel was violated by his trial counsel's failure to object to the introduction of his codefendants' statements and his failure to move for separate trials or for separate juries.   The Michigan Court of Appeals held that trial counsel was not ineffective, because the trial court had already ruled on the codefendant's motion:

> Defendant asserts that his trial counsel was ineffective for failing to object to the admission of the codefendants' statements and for failing to move for a separate trial. But these would have been fruitless actions because the trial court considered and rejected both actions on a codefendant's motion. The law does not require an attorney to take futile actions, and it would have been futile for trial counsel to renew failed motions. State Appeal, p 2; 2004 WL 258209*1(citation omitted).

If the Court accepts my recommendation that it not find a procedural default of Claims I and II above, there is no reason to disturb this ruling. However, if a procedural default were to be found, this Court should then find that the Michigan Court of Appeals' rejection of this claim is contrary to clearly established Supreme Court law.

To establish a violation of the right to effective assistance of counsel, petitioner must satisfy two components. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v.*

---

[6]Although petitioner treated his ineffective assistance of counsel claims separately as subarguments of the above two claims, both will be treated here as Claim III.

*Washington,* 466 U.S. 668, 687 (1984).  To demonstrate that counsel's performance was deficient, petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.,*  466 U.S. at 688.  To demonstrate prejudice,  he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Judicial review of counsel's performance must be highly deferential, with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Id*., 466 U.S. at 689.  The defendant must overcome the presumption that the challenged action or inaction "might be considered sound trial strategy." *Id.* (citation omitted).  Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact entitled to de novo review.  *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir.2000).

As petitioner argues, a knowledge of the applicable law is essential to providing effective assistance, and considering the extensive Supreme Court case law discussed above,  no competent attorney could have failed to recognize the confrontation clause violations that occurred because of the introduction of the out-of court statements of the non-testifying codefendants at the joint trial.

 Respondent argues that the Court should find that the failure to object to the statements or to move for a separate trial or jury was sound trial strategy, in light of the strong presumption of effective assistance and because "the record suggests that allowing joint trial and admission of the co-defendants' statements was a part of trial counsel's strategy," Answer to Petition, p. 7.  Respondent points out that the trial attorney used the differences between the statements to show that there was no meeting of the minds, and  therefore  no conspiracy.

As discussed  above, the out-of-court statements of the codefendants  were extremely

persuasive proof that the plan was to rob the night manager and that the hammer was to be used as a weapon. Conspiracy to commit an armed robbery carries a potential life sentence. These statements made it far less likely that the jury would believe either petitioner's testimony that he intended only a breaking and entering and never agreed to a plan to rob the manager, or his testimony and his custodial statement that the hammer was not to be used as a weapon. While the attorney ultimately made the most of the evidence he was forced to explain, it could not be considered a sound strategy to acquiesce in the introduction of these extremely damaging proofs on the outside chance that he could convince the jury to interpret them to his client's advantage. Respondent does not argue harmless error, nor could such an argument prevail.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims resulted in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should grant petitioner's application for the writ of habeas corpus.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v.*

*Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:  June 13, 2006

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on June 13, 2006.

s/Eddrey Butts
Case Manager

33