UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN DALY,

            Petitioner,

                               CIVIL CASE NO. 05-40186

v.

S.L. BURT,                             HONORABLE STEPHEN J. MURPHY, III

            Respondent.
_____/

**ORDER GRANTING PETITIONER'S
APPLICATION FOR WRIT OF HABEAS CORPUS**

Kevin Jonathan Daly ("Petitioner"), presently on parole under the custody of the Ann Arbor Parole Office, Ann Arbor Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  In his *pro se* application, Petitioner challenges his conviction for attempted armed robbery, M.C.L §§ 750.92 and 750.529; and for conspiracy to commit armed robbery, M.C.L. §§ 750.157a and 750.529. The case was referred to Magistrate Judge Paul J. Komives, who issued a Report and Recommendation recommending that the Court grant habeas corpus relief.  The magistrate judge served the Report and Recommendation on the parties and notified the parties that any objections must be filed within ten days of service.  Respondent filed timely objections.  For the reasons stated below, the Court overrules Respondent's objections and adopts the Report and Recommendation. Accordingly, Petitioner's application for writ of habeas corpus is **CONDITIONALLY GRANTED**.

---

[1]See the Michigan Department of Corrections' Offender Tracking Information System ("OTIS"), of which this Court is permitted to take judicial notice.  *See Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821-22 n.3 (E.D. Mich. 2004).

**I.     Background**

On February 21, 2002, police obtained a tip that a robbery was to occur at a McDonald's restaurant in South Lyon, Michigan. Pursuant to the tip, two police officers went to the McDonald's and found Petitioner and Grant Huntsman near a dumpster behind the restaurant. The officers found a ski mask on the ground near Petitioner and a hammer in Petitioner's pocket. There was also a ski mask on the ground near Huntsman and a Maglite flashlight on Huntsman's person. In addition, the police found Roger Meloche waiting in Huntman's car in a nearby apartment complex. At the station in police custody, Huntsman and Meloche provided written statements. Petitoner was also interrogated, but his responses were not written down or recorded.

Huntsman, Meloche, and Petitioner were tried together with the same jury in Oakland County Circuit Court. Before trial, Meloche moved for severance or, in the alternative, for separate juries, on the grounds that the introduction of the statements of the other two defendants would violate his Sixth Amendment rights to confrontation and cross-examination. In the an opinion and order denying the motion, the trial court found that there was no evidence that the defenses were mutually antagonistic or mutually exclusive. Further, the trial court held that "all of the statements are admissible against each defendant as statements against interest under MRE 804(b)(3)." *People v. Meloche*, No. 02-183788-FC, at 3 (Wayne Cty. Cir. Ct., Aug. 5, 2002). The trial court found that the Confrontation Clause was not violated as the statements bore sufficient indicia of reliability as required by *People v. Poole*, 444 Mich. 151, 162-163 (1993) and *Ohio v. Roberts*, 448 U.S. 56 (1980). The trial court concluded that the defendants were not entitled to separate juries or trials.

At trial, Petitioner's defense theory was that he did not intend to commit armed robbery, but instead intended to break and enter the McDonald's restaurant to steal money from the safe. Both Meloche and Huntsman did not testify at trial, but the prosecution was able to admit their statements into evidence through one of the arresting officers, Officer Baker. Baker testified regarding statements made by all defendants after the arrest and while under custody.

According to Officer Baker's testimony, Petitioner told Baker that Huntsman and Petitioner intended to rob the manager when he left the restaurant with the nightly deposit, that Petitioner was not going to hurt the manager with the hammer but only carried the hammer in case a dispute arose among the defendants regarding the division of the proceeds, and that Meloche was the getaway driver and lookout.

Baker also testified to statements made by Meloche and Huntsman. According to Baker's testimony, Meloche told Baker that the plan was to rob the manager as he left the restaurant, and that Meloche did not really want to be involved, but because of peer pressure, he agreed to the least amount of participation. Officer Baker testified that Huntsman told Baker that the plan was to rob the night manager and that Huntsman did not mention breaking into the restaurant. Baker further testified that none of the defendants had told him of an intention to break into the restaurant to steal from the safe. Both Meloche and Huntsman's written statements were read and admitted into evidence. After presenting the above evidence, the prosecution rested and all three defendants moved unsuccessfully for directed verdicts. Specifically, Petitioner moved to have the charges reduced to conspiracy to commit unarmed robbery and attempted unarmed robbery.

After his failed motion, Petitioner testified on his own behalf that his intention was

3

to break into the restaurant and to steal money from the safe. Petitioner testified that it had been his intention to break the window with the hammer, enter the restaurant, open and empty the safe, and leave. Petitioner further explained that Huntsman carried the flashlight to illuminate the dial on the safe. Petitioner claimed he knew the combination to the safe since he was a former employee of the restaurant. Petitioner explained that they were going to wear the ski masks because of the surveillance cameras in the restaurant. In addition, Petitioner pointed out that he and Huntsman were not positioned to accost the night manager because the manager would exit the side door near his car, and Petitioner and Huntsman would have had to cross a long distance in full view of the street and manager in order to reach him. Petitioner further stated that he did not tell Officer Baker that he intended to rob the manager. Petitioner maintained that he told the officer that they were waiting for the manager to leave so they could break into and rob the restaurant.

During deliberations, the jury requested copies of the written statements of all three defendants. They were only provided copies of Meloche's and Huntsman's statements, as Petitioner had not written one.

On August 12, 2002, the jury returned a verdict. Petitioner was found guilty of attempted armed robbery and conspiracy to commit armed robbery. Subsequently, Petitioner appealed his conviction. On February 12, 2004, the Michigan Court of Appeals affirmed Petitioner's conviction after finding no merit to his claims. Petitioner sought leave to appeal these same issues to the Michigan Supreme Court. On October 28, 2004, the Michigan Supreme Court denied Petitioner's application for leave to appeal. Subsequently, Petitioner filed an application for a writ of habeas corpus on the same issues, which is now before this Court. Petitioner argues that the trial court's introduction of out-of-court

4

statements of the non-testifying codefendants and the trial court's refusal to grant Petitioner a separate trial violated his rights under the Confrontation Clause by ultimately denying him a fair trial. In the alternative, Petitioner argues that his federal constitutional right to effective assistance of counsel was violated by his counsel's failure to object to the introduction of his codefendants' statements and his failure to move for separate trials or for separate juries.

In his Report and Recommendation, the magistrate judge concluded that the state courts' resolution of Petitioner's claims were contrary to, and involved an unreasonable application of, clearly established federal law. Accordingly, the magistrate judge recommended that the Court grant Petitioner habeas corpus relief.

## II. Standard of Review

The Court's standard of review for a magistrate judge's Report and Recommendation depends upon whether a party files objections. If a party objects to portions of the Report and Recommendation, the Court reviews those portions de novo. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). De novo review in these circumstances requires at least a review of the evidence before the magistrate judge; the Court may not act solely on the basis of a magistrate judge's Report and Recommendation. *See* 12 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 3070.2 (1997); *see also Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). In this case, the respondent has filed objections to the magistrate judge's Report and Recommendation. Accordingly, the Court has conducted a de novo review of the record.

The standard of review for habeas corpus relief from state court is governed by the following statute:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

### III.   Discussion

The Court will first address the issue of whether there was a procedural default barring review of Petitioner's claim. In his Report and Recommendation, the magistrate judge concluded that there was no firmly established and regularly followed state practice

6

that required counsel for Petitioner to repeat the motion and arguments of codefendant's counsel and thus there was no procedural default. Respondent objects to this conclusion of the magistrate judge. After conducting a de novo review of the record, the Court agrees with the magistrate judge's finding that Petitioner's failure to object to the trial court's ruling regarding the admission of his codefendants' statements does not amount to a procedural default of Petitioner's claims.

As the magistrate judge correctly cited, a procedural default will bar a federal habeas court from reviewing a question of law if it is a "firmly established and regularly followed state practice." *James v. Kentucky*, 466 U.S. 341, 348-51 (1984). As recognized by the Report and Recommendation, the contemporaneous objection rule is a firmly established and regularly followed state practice, and failure to follow this rule is grounds for barring review of state error. However, as the magistrate judge explained, Michigan appellate courts have held that, where defendants are jointly tried, it is not necessary for an attorney to repeat objections adequately made by counsel for a codefendant in order to preserve an issue. *See People v. Bradford*, 69 Mich. App. 583, 586 (1976).

Respondent argues in his objections that the exception to the contemporaneous objection rule only applies when the codefendant's objection is literally identical to the one the defendant would have made, and that in Petitioner's case, the objections were not literally identical. The Court disagrees with Respondent. As correctly noted by the magistrate judge, a codefendant's objection is sufficient if it directs the judge's attention to the matter. *Id.*; *see also People v. Logie*, 321 Mich. 303, 307 (1948); *People v. Clark*, No. 256190, 2005 WL 3556153, at *4 n.6 (Mich. Ct. App., Dec. 29, 2005); *People v. Harper*, No. 230717, 2004 WL 1335834, at *1 (Mich. Ct. App., June 15, 2004); *People v. Head*, No. 227053, 2002 WL 1747949, at *5 n.4 (Mich. Ct. App., July 26, 2002). If Petitioner had

objected to the trial court's ruling on whether the admission of the statements violated the Sixth Amendment right to confrontation, it would have raised the same issue as codefendant's objection. Therefore, Petitioner's claim would have been literally identical to the objection made by Petitioner's codefendant.

Furthermore, in answering Petitioner's claim regarding ineffective assistance of counsel, the Michigan Court of Appeals stated that failing to object to the admission of codefendants' statements and failing to move for separate trials would have been "fruitless actions because the trial court considered and rejected both actions on a codefendant's motion. The law does not require an attorney to take futile actions, and it would have been futile for trial counsel to renew failed motions." *People v. Daly*, No. 243958, 2004 WL 258209, at *1 (Mich. Ct. App., Feb. 12, 2004). Thus, there was no firmly established and regularly followed state practice that required counsel for Petitioner to repeat the motion and arguments of codefendant's counsel.

In his objections, Respondent further argues that it is entirely possible that Petitioner purposely did not object to the trial court's order allowing the admission of codefendants' statement, as part of Petitioner's trial strategy. However, as noted by the magistrate judge, the codefendants' statements were extremely persuasive proof that the plan was to rob the night manager and that the hammer was to be used as a weapon. The purposeful introduction of the extremely damaging proofs of codefendants' statements cannot be considered sound trial strategy. Since, the trial court allowed the admission of codefendants' statements, Petitioner's counsel had no other choice but to make the most of the admitted evidence. Thus, this Court is not persuaded by Respondent's argument that it was part of Petitioner's trial strategy to not object to the damaging statements. Consequently, the Court finds that there was no procedural default. The Court will now

consider the merit of Petitioner's habeas corpus claims.

Petitioner argues that the introduction of the codefendants' statements at trial, as proof of Petitioner's guilt, violated his rights under the Confrontation Clause and denied him a fair trial. In his Report and Recommendation, the magistrate judge concluded that the decision of the Michigan courts to allow the out-of-court statements of nontestifying codefendants was contrary to, and an unreasonable application of, clearly established law regarding the Confrontation Clause. The Court finds that the reasoning of the magistrate judge is sound and his conclusions are correct.

The United States Supreme Court's opinion in *Crawford v. Washington*, 541 U.S. 36 (2004), was decided in between Petitioner's conviction and his subsequent appeals. Accordingly, there is some uncertainty regarding what legal standard should apply. However, under an analysis of both pre-*Crawford* and post-*Crawford* law, the magistrate judge correctly concluded that the Michigan courts improperly introduced the statements of Petitioner's codefendants.

Under the pre-*Crawford* test found in *Ohio v. Roberts*, 448 U.S. 56 (1980), the admission of hearsay statements by unavailable declarants did not violate the Confrontation Clause if they bore "adequate indicia of reliability," either by falling within a firmly rooted hearsay exception, or by possessing "particularized guarantees of trustworthiness" such that adversarial testing would be expected to add little, if anything to the statement's reliability. *Id.* at 66. The particularized guarantees of trustworthiness should be focused on the circumstances surrounding the making of the statements. *See Idaho v. Wright*, 497 U.S. 805, 822 (1990).

Here, under this *Roberts* standard, the trial court erred in finding that the codefendants' statements bore an adequate indicia of reliability. As the magistrate judge

9

correctly reasoned, the codefendants' behavior of shifting or stretching the blame among one another and the fact that the statements were made in police custody weighed heavily against finding that there was an adequate indicia of reliability. Additionally, the declarants' admission of their own guilt is not sufficient to establish the requisite indicia of reliability regarding someone else's guilt. Accordingly, the magistrate judge properly concluded that the state court's admission of the out-of-court statements of nontestifying codefendants were not supported by a finding of an "adequate indicia of relibality." *Roberts*, 448 U.S. at 66. Thus, under *Roberts*, the admission of the statements violated Petitioner's rights under the Confrontation Clause.

In *Crawford v. Washington*, the Supreme Court reversed the "indicia of reliability" standard in *Roberts* and held that where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional concerns is the right to confrontation. *Crawford*, 541 U.S. at 68-69. The Supreme Court in *Crawford* defined statements made in police custody as testimonial. *Id.* at 68. In applying *Crawford*, the magistrate judge correctly acknowledged that the codefendants' statements were made during police interrogation and were therefore testimonial. Since the codefendants did not testify, there was no opportunity for Petitioner to cross-examine or confront the codefendants regarding their statements. Thus, under *Crawford*, Petitioner has a Confrontation Clause violation.

Consequently, under both the *Roberts* and *Crawford* standards, there is a violation of Petitioner's rights under the Confrontation Clause. The state court's resolution of Petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. . ." 28 U.S.C. § 2254(d). This error by the state courts was not harmless. The magistrate judge was correct in finding that the error had a "substantial and injurious

10

effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Consequently, the Court concludes that Petitioner is entitled to habeas corpus relief.

Because this Court's conclusion that Petitioner is entitled to habeas relief on this claim is dispositive of the petition, the Court considers it unnecessary to review Petitioner's other claims and declines to do so. *See Satterlee v. Wolfenbarger*, 374 F. Supp. 2d 562, 567 (E.D. Mich. 2005); aff'd, 453 F. 3d 362 (6th Cir. 2006); cert. den., 549 U.S. 1281 (2007); *see also Haynes v. Burke*, 115 F. Supp. 2d 813, 819-20 (E.D. Mich. 2000).

The Sixth Circuit Court of Appeals has held that when a defendant has suffered a Sixth Amendment violation, the appropriate remedy is a new trial. *See Warner v. United States*, 975 F.2d 1207, 1214-15 (6th Cir. 1992). In the present case, the state courts denied Petitioner a fair trial, and the appropriate remedy is a new trial "free from the taint which plagued the initial trial." *Rugiero v. United States*, 330 F. Supp. 2d 900, 909 (E.D. Mich. 2004); *see also Robinson v. Stegall*, 343 F. Supp. 2d 626, 644-45 (E.D. Mich. 2004); *Tyler v. United States*, 78 F. Supp. 2d 626, 633 (E.D. Mich. 1999).

### IV.  Conclusion

For the reasons stated above, the Court concludes that Petitioner was denied the right to confrontation at trial and that the state court's decision to the contrary constitutes an unreasonable application of federal law and the facts. Consequently, Petitioner is entitled to habeas corpus relief.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Respondent's objections [docket entry #25] are **OVERRULED**.

**IT IS FURTHER ORDERED** that the magistrate judge's Report and Recommendation [docket entry #23] is **ACCEPTED and ADOPTED** as the opinion of this

Court.

**IT IS FURTHER ORDERED** that Petitioner's application for writ of habeas corpus [docket entry #1] is **CONDITIONALLY GRANTED**. The State shall either release Petitioner or institute proceedings to retry him within 90 days of the filing date of this order. Should the State fail to do so, Petitioner may move for an unconditional writ seeking immediate release from custody. Should the State appeal this decision to the United States Court of Appeals for the Sixth Circuit, this order is stayed pending the disposition of that appeal.

**SO ORDERED.**

s/Stephen J. Murphy, III
Stephen J. Murphy, III
United States District Judge

Dated: March 25, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 25, 2009, by electronic and/or ordinary mail.

s/Alissa Greer
Case Manager